There can be no doubt that the decrees of this Court rank as judgments, and bind the property of the debtor, and must be paid as judgment debts by the executors.* *207 But the question is, whether the decree against John Price & Co. binds his private estate, so as to put complain ant’s demand on the looting of judgments against J. Price in his private capacity, with priority over his bond creditors, there being no joint estate out of which the debt can be paid.
Upon this question a Judge sitting here is not at liberty to entertain a doubt. It has been settled by repeated decisions of this Court, that the private estate is primarily liable to the private creditors ; and the co-partnership effects to the copartnership creditors.
This doctrine is distinctly laid down in the case of Dickenson vs. Legare and Smith, decided in 1797, and recognised in the case of the administrator of Craven vs. John Owen, executor oí Philip Hawkins, decided in 1809, as well as in other cases.
In the case of Jacombvs. Harwood, 2 Yes. 265, it is expressly stated by the- master of the rolls, that if a surviving copartner give a bond or judgment for a co- *208 partnership debt, though it extinguishes the simple contract debt, yet it would still be a copartnership debt on *be bond or judgment.
it was argued, however, that Mr. Price had assumed o * this debt in his own private capacity, and that Ms private estate was therefore liable; that this assumption was not gratuitous, b ut was fo unded on Mr. Price’s having received the funds expressly liable for, and remitted to him for payment of this debt to Mr. Woddrop, the complainant, which he had applied to his own use — .whereupon a lien attaches to his estate.
With respect to the assumption, there was no proof of any express assumption. The executor in his answer does not admit it. It could only be inferred from John Price’s having received the fund above mentioned. But how did he receive and apply that fund ? Certainly in his character of surviving and acting copartner. And Mr. Bee, the confidential clerk of Mr. Price, swore expressly that the money received -was carried to the credit of Price & Co. and applied to the payment of J. Price & Co. 5 and that John Price’s private estate is a large creditor of John Price & Co. Let us however suppose that John Price had voluntarily assumed this debt of J. Price & Co. or had received and applied the *209 fund destined to pay the debt, to his own use, so as to become liable therefor, it does not necessarily follow that the decree against J. Price & Co. would attach and fix itself upon his private estate, so as to en- . title this creditor to come m with the judgment creditors of J. Price against his private estate. For it is evident that his liability in his own private capacity in the case supposed would not arise under the decree, but under the new assumpsit expressed or implied, which could not amount to more than a simple contract debt.
There are cases undoubtedly in which the Court has felt itself called upon and authorised under very peculiar circumstances to follow a particular fund, which an executor (for example) has received on judgments or bonds of the estate in his hands, and to make the executor or his estate liable, in the degree or rank in which the original debt stood. But it has always been under very peculiar circumstances. It does not however appear to me that this case comes> up to those to which I have alluded. In the case of M’ Cawley and others, executors of Edgar Wells vs. M’Farlane, Player and their assignees, this Court decided in 1804, this very point, and refused to follow the fund, or to allow the representatives of Edgar Wells to have any preferable lien on the copartnership effects of M’Farlane and Player, though it was proved that M’Farlane had taken out of the copartnership estate of Wells and M’Farlane considerable sums of money, and carried them into the funds of M’Farlane and Player.
This is a hard case on the complainant, and I am much disposed to give him the relief he prays j but I do not perceive that it is possible to do so, if the views which I have taken of the subject be correct.
The bill must be dismissed.
From this decree there was no appeal.

 The decrees of the Court of- Chancery are put upon the same foot, ing in Equity with the judgments at law. 1 Ves. 214, 2 P. Wms. 621, 2 Vern. 89, 2 Salk. 382, 2 Ves. 125, Perry v. Phillips, 10 Ves. 34. Put a decree quod computet does not pass in rem judicatam, till the finad decree. 2 Atk. 386. Where a decree is obtained at the suit of credit tors, for an account of the testator’s personal estate, it will bind othjsr *207 creditors, andif they sue at law the Court will award an injunction. 1 Ves. 211, 2 Atk. 386, 1 Bro. C.C. 182, 184; 4 Bro. C. C. 163, 167.. The great case on the subject which settled the doctrine as to the effect of decrees was that of Morris v. the Bank of England, reported in cases Temp. Talbot 217, which was first decided by the-Master of the Rolls, then affirmed by Lord Chancellor Talbot, and afterwards by the House of Lords. See 3 P. Wms. 401,2, in a note, and 4 Bro. P. C. 287, 2 Eq. Cas. abr. 525. (It is best reported in 4 Brown.) - See too 1 Ves. sen. 211, 213.
Eren in the case of residuary legatees suing, to clear the funds for payment of debts, the Court granted an injunction against persons suing at law, because the final decree of this Court being equal to a judgment at law, the Court is bound to maintain its jurisdiction and its own proceedings ; and it is necessary to protect the executor in obeying the exigency of that equitable judgment, which could not be made matter of a valid plea at law. If it were not so, after a decree where the Court has taken upon itself the administration of the assets, there would be inextricable difficulty for the executor. Brooks v. Reynolds, 1 Bro. C. C. 182; Kenyon v. Worthington, 10 Ves. 40.
Some creditors suing and getting a decree it is good for all. 12 Ves. 409; 1 Schoals and Lefroy's rep. 156, 296; 10 Ves. 40. Where there is a decree for a debt, and defendant dies, such decree does not bind lands descended to the heir, as a judgment at law does ; because the decree acts in personam and not inrem. The remedy op a decree is only *208 a proceeding as fora contempt in not obeying the decree. 2 P. Wms. 621, 1 Ves. sen. 182, 214, 496; 3 Atk. 594; Cas. Temp. Talbot 222. But as our act of Assembly does provide an additional remedy, and authorises an execution to be issued to enforce the decrees of the Court, which acts in rem, it is fairly inferrable that the decrees of the Court do bind lands-in the hands of the heir.
The death of one of the defendants, after argument, and whilst Jjiet cause stood for judgment does not necessarily prevent the decree being pronounced. 9 Vesey, 461. A decree between two co-defendants, is grounded on the pleadings and proofs between plaintiffs and defendants, and is regular. The Court is b ound to make such decree, to avoid multiplicity of suits. This was decided by Lord Ch. Redesdale in Ireland. See 2 Schoals and Lefroy, 709, 718, Chamly v. Dunsany, and affirmed by the House of Lords; the Lord Chancellors Eldon and Ers-kine agreeing. (But see 2 Atk.371, Howard and Hopkins.) Anda ne exeat has been granted in favor of one defendant against another, where both were called upon to account by complainant.-